IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| Brandon Darcy, | |
| *On behalf of himself and those similarly situated*, | Civil Case No.  CIV-20-1245-PRW |
| Plaintiff, | |
| v. | |
| New Vision Pizza, LLC; JM Pizza, Inc.; J & B Pizza Inc.; D&J Pizza, L.L.C.; John Mekler; Dan Fleck; Doe Corporation 1-10; John Doe 1-10; | Jury Demand Endorsed Hereon |
| Defendants. | |

## CLASS AND COLLECTIVE ACTION COMPLAINT

1.    Brandon Darcy, on behalf of himself and similarly-situated individuals, brings this action against Defendants New Vision Pizza, LLC; JM Pizza, Inc.; J & B Pizza Inc.; D&J Pizza, L.L.C.; John Mekler; Dan Fleck; Doe Corporation 1-10; and John Doe 1-10 ("Defendants"). Plaintiff seeks appropriate monetary, declaratory, and equitable relief based on Defendants' willful failure to compensate Plaintiff and similarly-situated individuals with minimum wages as required by the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Oklahoma Labor Protection Act ("OLPA"), O.S. tit. 40, § 165, *et seq.*

2.      Defendants own and/or operate multiple Domino's Pizza locations ("Defendants' Domino's stores") in Oklahoma and Texas.

3.      Upon information and belief, Defendants' Domino's stores are owned and operated by Domino's franchise operators John Mekler and Dan Fleck.

4.      Plaintiff seeks to represent the delivery drivers who have worked at Defendants' Domino's stores.

5.      Defendants repeatedly and willfully violated the Fair Labor Standards Act, and the Oklahoma Labor Protection Act by failing to adequately reimburse delivery drivers for their delivery-related expenses, thereby failing to pay delivery drivers the legally mandated minimum wages for all hours worked.

6.      All delivery drivers at Defendants' Domino's stores, including Plaintiff, have been subject to the same or similar employment policies and practices.

## Jurisdiction and Venue

7.      Under 28 U.S.C. § 1331 and 29 U.S.C. § 216(b), this Court has jurisdiction over Plaintiff's FLSA claims.

8.      Under 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's Oklahoma law claims.

9.      Venue in this Court is proper under 28 U.S.C. § 1391(b) because Defendants reside in this district.

## Parties

**<u>Plaintiff</u>**

**Brandon Darcy**

10.     Plaintiff Brandon Darcy is a resident of Oklahoma.

11.     Plaintiff was an "employee" of all of the Defendants as defined in the FLSA and the OLPA.

12.     Plaintiff has given written consent to join this action.

## Defendants

13.     Defendants' Domino's stores are owned and/or operated by a number of entities and individuals, each of whom employed Plaintiff and the Delivery Drivers.

**The Defendant Entities**

14.     The Defendant Entities—New Vision Pizza, LLC; JM Pizza, Inc.; J & B Pizza Inc.; and D&J Pizza, L.L.C.—are corporations headquartered in and around Altus, Oklahoma and doing business in Oklahoma and Texas.

15.     Defendant New Vision Pizza, LLC is an Oklahoma domestic for-profit corporation authorized to do business under the laws of Oklahoma and Texas, whose primary places of business are located in Altus, Oklahoma and Wichita Falls, Texas.

16.     Defendant JM Pizza Inc. is a for-profit corporation whose principal address is in Altus, Oklahoma, and is authorized to do business under the laws of Oklahoma and Texas.

17.     Defendant J & B Pizza, Inc is an Oklahoma domestic for-profit business corporation registered in McAlester, Oklahoma.

3

18.     Defendant D&J Pizza, L.L.C. is an Oklahoma domestic limited liability corporation located in Altus, Oklahoma and authorized to do business under the laws of Oklahoma and Texas.

19.     The Defendant Entities were founded and are owned and/or operated by Defendants John Mekler and Dan Fleck.

20.     Upon information and belief, some of the Defendant entities primarily function to operate a group of stores within Defendants' Domino's operation. For example, New Vision Pizza, LLC appeared on plaintiff's paystubs during his employment as a delivery driver at Defendants' Domino's store in Ardmore. After working for several months, plaintiff began delivering for three other stores in Defendant's Domino's operation, but his paystubs were still sent to the store in Ardmore.

21.     Together, all of the Defendants make up the Defendants' Domino's operation.

22.     Defendants' Domino's operation has the authority to and does hire and fire employees, supervise and control the work schedules and conditions of employees, determine the rate and methods of pay, and/or maintain employee records.

23.     Defendants form a "single employer" as they are part of a single integrated enterprise and/or they are joint employers as they jointly operate a chain of Domino's franchise stores and maintain interrelated operations, centralized control of labor relations, common management, and common ownership and financial control. Because the work performed by Plaintiff and all other Delivery Drivers benefited all Defendants and directly

4

or indirectly furthered their joint interests, Defendants are collectively the joint employers of Plaintiff and other similarly situated employees under the FLSA's definition of "employer."

24.    Each of the Defendant Entities has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

25.    Each of the Defendant Entities directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

26.    Each of the Defendant Entities maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

27.    Each of the Defendant Entities is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

28.    Each of the Defendant Entities has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

29.    Each of the Defendant Entities has gross revenue that exceeds $500,000 per year.

30.    Collectively, the Defendant Entities have gross revenue that exceeds $500,000 per year.

5

**New Vision Pizza, LLC**

31.    Defendant New Vision Pizza, LLC is a corporation headquartered in and around Altus, Oklahoma and doing business in Oklahoma and Texas.

32.    Defendant New Vision Pizza is an Oklahoma domestic for-profit corporation authorized to do business under the laws of Oklahoma and Texas, whose primary place of business is located in Altus, Oklahoma and Wichita Falls, Texas.

33.    Defendant New Vision Pizza, LLC was founded and is owned and/or operated by Defendants John Mekler and Dan Fleck.

34.    Defendant New Vision Pizza, LLC has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

35.    Defendant New Vision Pizza, LLC directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

36.    Defendant New Vision Pizza, LLC maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

37.    Defendant New Vision Pizza, LLC is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

38.     Defendant New Vision Pizza, LLC has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

39.     Defendant New Vision Pizza, LLC has gross revenue that exceeds $500,000 per year.

**JM Pizza, Inc.**

40.     Defendant JM Pizza, Inc. is a corporation headquartered in and around Altus, Oklahoma and doing business in Oklahoma and Texas.

41.     Defendant JM Pizza, Inc. is an Oklahoma domestic for-profit corporation authorized to do business under the laws of Oklahoma and Texas, whose primary place of business is located in McAlester Oklahoma.

42.     Defendant JM Pizza, Inc. was founded and is owned and/or operated by Defendants John Mekler and Dan Fleck.

43.     Defendant JM Pizza, Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

44.     Defendant JM Pizza, Inc. directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

45.     Defendant JM Pizza, Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing,

disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

46.     Defendant JM Pizza, Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

47.     Defendant JM Pizza, Inc. Defendant New Vision Pizza, LLC has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

48.     Defendant JM Pizza, Inc. has gross revenue that exceeds $500,000 per year.

**J & B Pizza Inc.**

49.     Defendant J & B Pizza Inc. is a corporation headquartered in and around McAlester, Oklahoma and doing business in Oklahoma and Texas.

50.     Defendant J & B Pizza Inc. is an Oklahoma domestic for-profit corporation authorized to do business under the laws of Oklahoma and Texas, whose primary place of business is located in McAlester Oklahoma.

51.     Defendant J & B Pizza Inc. was founded and is owned and/or operated by Defendants John Mekler and Dan Fleck.

52.     Defendant J & B Pizza Inc. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

53.     Defendant J & B Pizza Inc. directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

54.     Defendant J & B Pizza Inc. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

55.     Defendant J & B Pizza Inc. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

56.     Defendant J & B Pizza Inc. has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

57.     Defendant J & B Pizza Inc. has gross revenue that exceeds $500,000 per year.

**D&J Pizza, L.L.C.**

58.     Defendant D&J Pizza, L.L.C. is a corporation headquartered in and around Altus, Oklahoma and doing business in Oklahoma and Texas.

59.     Defendant D&J Pizza, L.L.C. is an Oklahoma domestic for-profit corporation authorized to do business under the laws of Oklahoma and Texas, whose primary place of business is located in Altus Oklahoma.

60.     Defendant D&J Pizza, L.L.C. was founded and is owned and/or operated by Defendants John Mekler and Dan Fleck.

61.     Defendant D&J Pizza, L.L.C. has substantial control over Plaintiff and similarly situated employees' working conditions, and over the unlawful policies and practices alleged herein.

9

62.    Defendant D&J Pizza, L.L.C. directly or indirectly controls the terms and conditions of Plaintiff's work and the work of similarly situated employees.

63.    Defendant D&J Pizza, L.L.C. maintained control, oversight, and direction over Plaintiff and similarly situated employees, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, reimbursements, pay rates, deductions, and other practices.

64.    Defendant D&J Pizza, L.L.C. is an "employer" of Plaintiff and similarly situated employees as that term is defined by the FLSA.

65.    Defendant D&J Pizza, L.L.C. has been and continues to be an enterprise engaged in the "production of goods for commerce" within the meaning of the phrase as used in the FLSA.

66.    Defendant D&J Pizza, L.L.C. has gross revenue that exceeds $500,000 per year.

**John Mekler**

67.    Defendant John Mekler is an owner of the Defendant Entities and Defendants' Domino's stores.

68.    Upon information and belief, John Mekler is a Domino's Pizza franchisee.

69.    Upon information and belief, John Mekler has entered into franchise agreements with Domino's Pizza relating to each of Defendants' Domino's stores.

70.    Upon information and belief, John Mekler an owner of New Vision Pizza, LLC.

71.     Upon information and belief, John Mekler an owner of JM Pizza, Inc.

72.     Upon information and belief, John Mekler an owner of J & B Pizza Inc.

73.     Upon information and belief, John Mekler an owner of D&J Pizza, L.L.C..

74.     Upon information and belief, John Mekler is the President of New Vision Pizza, LLC.

75.     Upon information and belief, John Mekler is the President of JM Pizza, Inc.

76.     Upon information and belief, John Mekler is the President of J & B Pizza Inc.

77.     Upon information and belief, John Mekler is the President of D&J Pizza, L.L.C..

78.     Upon information and belief, John Mekler is an officer of New Vision Pizza, LLC.

79.     Upon information and belief, John Mekler is an officer of JM Pizza, Inc.

80.     Upon information and belief, John Mekler is an officer of J & B Pizza Inc.

81.     Upon information and belief, John Mekler is an officer of D&J Pizza, L.L.C..

82.     John Mekler operates multiple Domino's stores across Oklahoma and Texas.

83.     John Mekler is individually liable to the delivery drivers at Defendants' Domino's stores under the definitions of "employer" set forth in the FLSA and OLPA because he owns and operates Defendants' Domino's stores, serves as a president and owner of the Defendant Entities, ultimately controls significant aspects of Defendants' Domino's stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees.  29 U.S.C. § 203(d).

11

84.    John Mekler is the franchisee of Defendants' Domino's stores.

85.    At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler has had financial control over the operations at each of Defendants' Domino's stores.

86.    At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler has a role in significant aspects of Defendants' Domino's stores' day to day operations.

87.    At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler has had control over Defendants' Domino's stores' pay policies.

88.    At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler has had power over personnel and payroll decisions at Defendants' Domino's stores, including but not limited to influence of delivery driver pay.

89.    At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler has had the power to hire, fire and discipline employees, including delivery drivers at Defendants' Domino's stores.

90.    At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler has had the power to stop any illegal pay practices that harmed delivery drivers at Defendants' Domino's stores.

91.     At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler has had the power to transfer the assets and liabilities of the Defendant entities.

92.     At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler has had the power to declare bankruptcy on behalf of the Defendant entities.

93.     At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler has had the power to enter into contracts on behalf of each of Defendants' Domino's stores.

94.     At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler has had the power to close, shut down, and/or sell each of Defendants' Domino's stores.

95.     At all relevant times, by virtue of his role as owner and president of Defendants' Domino's stores, John Mekler had authority over the overall direction of each of Defendants' Domino's stores and was ultimately responsible for their operations.

96.     Defendants' Domino's stores function for John Mekler's profit.

97.     John Mekler has influence over how Defendants' Domino's stores can run more profitably and efficiently.

**Dan Fleck**

98.     Defendant Dan Fleck is an owner of Defendants' Entities and Defendants' Domino's stores.

13

99.     Upon information and belief, Dan Fleck is a Domino's Pizza franchisee.

100.    Upon information and belief, Dan Fleck has entered into franchise agreements with Domino's Pizza relating to each of Defendants' Domino's stores

101.    Dan Fleck is an operator of Defendants' Domino's operation and Defendants' Domino's stores.

102.    Upon information and belief, Dan Fleck is an owner of New Vision Pizza, LLC.

103.    Upon information and belief, Dan Fleck is an owner of JM Pizza, Inc.

104.    Upon information and belief, Dan Fleck is an owner of J & B Pizza Inc.

105.    Upon information and belief, Dan Fleck is an owner of D&J Pizza, L.L.C..

106.    Upon information and belief, Dan Fleck is an officer of New Vision Pizza, LLC.

107.    Upon information and belief, Dan Fleck is an officer of JM Pizza, Inc.

108.    Upon information and belief, Dan Fleck is an officer of J & B Pizza Inc.

109.    Upon information and belief, Dan Fleck is an officer of D&J Pizza, L.L.C..

110.    Dan Fleck operates multiple Domino's stores across Texas and Oklahoma.

111.    Dam Fleck is individually liable to the delivery drivers at Defendants' Domino's stores under the definitions of "employer" set forth in the FLSA and OLPA because he owns and operates Defendants' Domino's stores, serves as an owner and officer of the Defendant Entities, ultimately controls significant aspects of Defendants' Domino's

stores' day-to-day functions, and ultimately controls compensation and reimbursement of employees. 29 U.S.C. § 203(d).

112.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants' Domino's stores, Dan Fleck has had financial control over the operations at each of the Defendants' Domino's stores.

113.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants' Domino's stores, Dan Fleck has had a role in significant aspects of the Defendants' Domino's stores' day to day operations.

114.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants' Domino's stores, Dan Fleck has had control over the Defendants' Domino's stores' pay policies.

115.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants' Domino's stores, Dan Fleck has had power over personnel and payroll decisions at the Defendants' Domino's stores, including but not limited to influence over delivery driver pay.

116.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants'

Domino's stores, Dan Fleck has had the power to hire, fire, and discipline employees, including Delivery Drivers at the Defendants' Domino's stores.

117.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants' Domino's stores, Dan Fleck has had the power to stop any illegal pay practices that harmed Delivery Drivers at the Defendants' Papa John's stores.

118.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants' Domino's stores, Dan Fleck has had the power to transfer the assets and liabilities of the Defendant entities.

119.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants' Domino's stores, Dan Fleck has had the power to declare bankruptcy on behalf of the Defendant entities.

120.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants' Domino's stores, Dan Fleck has had the power to enter into contracts on behalf of each of the Defendants' Domino's stores.

121.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants'

Domino's stores, Dan Fleck has had the power to close, shut down, and/or sell each of the Defendants' Domino's stores.

122.    At all relevant times, by virtue of his role as an owner, officer, and operator of the Defendant Entities, the Defendants' Domino's operation, and the Defendants' Domino's stores, Dan Fleck has had authority over the overall direction of each of Defendants' Domino's sores and was responsible for their operations.

123.    The Defendants' Domino's stores function for Dan Fleck's profit.

124.    Dan Fleck has influence over how the Defendants' Domino's stores can run more profitably and efficiently.

**Doe Corporation 1-10**

125.    Upon information and belief, Defendants own, operate, and control other entities and/or limited liability companies that also comprise part of Defendants' Domino's stores, and qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Domino's stores as that term is defined by the FLSA.

126.    Upon information and belief, John Mekler and Dan Fleck own and/or operate, in whole or in part, a number of other entities that make up part of Defendants' Domino's operation.

127.    Upon information and belief, the franchisor, Domino's Pizza, may also be liable as an employer of the delivery drivers employed at Defendants' Domino's stores.

128.    The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**John Doe 1-10**

129.     Upon information and belief, there are additional individuals who also qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Domino's stores as that term is defined by the FLSA.

130.     Upon information and belief, John Mekler and Dan Fleck have entered into co-owner relationships with a number of their managers and business partners, and those individuals might also qualify as "employers" of Plaintiff and the delivery drivers at Defendants' Domino's stores as that term is defined by the FLSA.

131.     The identities of these additional Defendants should be revealed as discovery progresses and can be named at that time.

**Facts**

**Class-wide Factual Allegations**

132.     During all relevant times, Defendants have operated Defendants' Domino's stores.

133.     Plaintiff and the similarly situated persons Plaintiff seeks to represent are current and former delivery drivers at Defendants' Domino's stores.

134.     All delivery drivers employed at Defendants' Domino's stores over the last five years have had essentially the same job duties.

135.     When there are no deliveries to make, Defendants' delivery drivers are required to work inside Defendants' Domino's stores folding boxes, doing dishes, stocking

coolers, mopping and sweeping the floor, take the trash out, preparing food, and completing other duties inside the restaurant as necessary.

136.    Defendants' delivery drivers work "dual jobs."

137.    Upon information and belief, Defendants' delivery drivers have been paid at or around minimum wage for the hours they worked inside the store.

138.    Defendants require delivery drivers at Defendants' Domino's stores to provide cars to use while completing deliveries for Defendants.

139.    Defendants require delivery drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

140.    Defendants require delivery drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing charges, licensing and registration costs, cell phone costs, GPS charges, and other equipment necessary for delivery drivers to complete their job duties.

141.    Pursuant to such requirements, Plaintiff and other similarly situated employees purchase gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, financing, licensing, and registration charges, and incur cell phone and data charges all for the primary benefit of Defendants.

142.    Upon information and belief, Defendants reimburse delivery drivers a set amount for each delivery they complete.

143.    Defendants' Domino's stores do not track or record the delivery drivers' actual expenses.

144.    Defendants' Domino's stores do not collect receipts from their delivery drivers related to the expenses they incur while completing deliveries.

145.    Defendants do not collect receipts of delivery drivers' gasoline purchases during weeks when the delivery drivers worked for Defendants.

146.    Defendants do not collect receipts of delivery drivers' automobile maintenance, repair, and parts purchased or paid for during weeks when the delivery drivers worked for Defendants.

147.    Defendants do not collect receipts of delivery drivers' monthly or annual automobile insurance costs.

148.    Defendants do not collect receipts of delivery drivers' automobile registration costs.

149.    Defendants do not collect receipts of delivery drivers' automobile financing or purchase costs.

150.    Defendants do not collect any other receipts from delivery drivers related to the automobile expenses they incur as delivery drivers at Defendants' Domino's stores.

151.    Defendants' Domino's stores do not reimburse their delivery drivers based on the actual expenses the delivery drivers incur.

152.    Defendants' Domino's stores do not reimburse their delivery drivers for the actual expenses delivery drivers incur.

153.    Defendants' Domino's stores do not reimburse their delivery drivers at the IRS standard business mileage rate.

154.    Defendants' Domino's stores did not even reasonably approximate the delivery drivers' expenses.

155.    Defendants' Domino's stores' reimbursement payments result in reimbursements that are less than the IRS standard business mileage rate for each mile driven.

156.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods have been:

    a.    2015: 57.5 cents/mile
    b.    2016: 54 cents/mile
    c.    2017: 53.5 cents/mile
    d.    2018: 54.5 cents/mile
    e.    2019: 58 cents/mile
    f.    2020: 57.5 cents/mile

157.    The delivery drivers at Defendants' Domino's stores have incurred even more in expenses than those contemplated by the IRS standard business mileage rate—*e.g.*, cell phone and data charges.

158.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated delivery drivers, they were deprived of minimum wages guaranteed to them by the FLSA and Oklahoma law.

159.    Defendants have applied the same or similar pay policies, practices, and procedures to all delivery drivers at Defendants' Domino's stores.

160.    Because Defendants paid their drivers a gross hourly wage at precisely, or at least very close to, the applicable minimum wage, and because the delivery drivers incurred unreimbursed automobile expenses, the delivery drivers "kicked back" to Defendants an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

161.    Defendants have willfully failed to pay federal and Oklahoma state minimum wage to Plaintiff and similarly situated delivery drivers at Defendants' Domino's stores.

### Plaintiff's Individual Factual Allegations

162.    Plaintiff worked at Defendants' Domino's stores in Ardmore, Ada, Durant, and McAllister, Oklahoma from approximately November 2019 to approximately May 2020.

163.    When Plaintiff was not delivering food, he worked inside the restaurant. His work inside the restaurant included doing dishes, cleaning, folding boxes, stocking the cooler, preparing food, taking the trash out and completing other duties inside the restaurant as necessary.

164.    Plaintiff's inside duties were not related to his delivery duties.

165.    Plaintiff was required to use his own car to deliver pizzas.

166.    Upon information and belief, Plaintiff was reimbursed a flat rate of approximately $0.90 for each order he delivered when making one delivery in one trip.

22

However, when making multiple deliveries in one trip, he was reimbursed at a flat rate of approximately $.50 per delivery for each delivery completed in that trip.

167.    Plaintiff was required to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendants' pizza and other food items.

168.    Plaintiff was required to incur and/or pay job-related expenses, including but not limited to automobile costs and depreciation, gasoline expenses, automobile maintenance and parts, insurance, cell phone service, GPS service, automobile financing, licensing and registration costs, and other equipment necessary for delivery drivers to complete their job duties.

169.    Plaintiff has purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation and damage, automobile financing, licensing and registration costs, and incurred cell phone and data charges all for the primary benefit of Defendants.

170.    Defendants did not track the actual expenses incurred by Plaintiff.

171.    Defendants did not ask Plaintiff to provide receipts of the expenses he incurred while delivering pizzas for Defendants.

172.    Defendants did not reimburse Plaintiff based on his actual delivery-related expenses.

173.    Plaintiff was not reimbursed at the IRS standard mileage rate for the miles he drives while completing deliveries.

174.    Defendants did not reimburse Plaintiff based on a reasonable approximation of his expenses.

175.    Plaintiff completed approximately 2.5 deliveries per hour.

176.    Plaintiff estimates that he drove 8.5 miles per delivery on average.

177.    Thus, Defendants' average effective reimbursement rate for Plaintiff was approximately $0.105 per mile ($0.90 per delivery ÷ 8.5 average miles per delivery).

178.    Because Defendants did not track, keep records of, or reimburse Plaintiff's actual expenses, they were required to reimburse Plaintiff at the IRS standard business mileage rate.

179.    In 2020, for example, the IRS business mileage reimbursement has been $0.575 per mile.

180.    Thus, during 2020, Defendants under-reimbursed Plaintiff by approximately $.47 ($.575 - $.105) per mile. Defendants under-reimbursed him by approximately $3.995 per delivery ($.47 × 8.5).

181.    Accordingly, while making deliveries, Plaintiff consistently "kicked back" to Defendants approximately $9.99 per hour ($3.995 × 2.5 deliveries per hour).

182.    After accounting for under-reimbursed expenses, Defendants failed to pay Plaintiff minimum wage as required by law.

### Collective Action Allegations

183.    Plaintiff brings the First Count on behalf of himself and all similarly situated current and former delivery drivers employed at Defendants' Domino's stores owned,

operated, and controlled by Defendants nationwide, during the three years prior to the filing of this Class Action Complaint and the date of final judgment in this matter, who elect to opt-in to this action (the "FLSA Collective").

184.    At all relevant times, Plaintiff and the FLSA Collective have been similarly situated, have had substantially similar job duties, requirements, and pay provisions, and have all been subject to Defendants' decision, policy, plan, practices, procedures, protocols, and rules of willfully refusing to pay Plaintiff and the FLSA Collective minimum wage for all hours worked and failing to reimburse delivery drivers for automobile expenses and other job-related expenses.  Plaintiff's claims are essentially the same as those of the FLSA Collective.

185.    Defendants' unlawful conduct is pursuant to a company policy or practice.

186.    Defendants are aware or should have been aware that federal law required them to pay employees minimum wage for all hours worked and to fully reimburse for "tools of the trade."

187.    Defendants' unlawful conduct has been widespread, repeated, and consistent.

188.    The First Count is properly brought under and maintained as an opt-in collective action under 29 U.S.C. § 216(b).

189.    The FLSA Collective members are readily identifiable and ascertainable.

25

190.    In recognition of the services Plaintiff has rendered and will continue to render to the FLSA Collective, Plaintiff will request payment of a service award upon resolution of this action.

### Class Action Allegations

191.    Plaintiff brings the Second Count under Federal Rule of Civil Procedure 23, on behalf of himself and a class of persons consisting of:

> All current and former delivery drivers employed by Defendants at Defendants' Domino's stores in the State of Oklahoma between the date five years prior to the filing of the original complaint and the date of final judgment in this matter ("Rule 23 Class").

192.    Excluded from the Rule 23 Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the class period has had, a controlling interest in Defendants; the Judge(s) to whom this case is assigned and any member of the Judges' immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Rule 23 Class.

193.    The number and identity of the Rule 23 Class members are ascertainable from Defendants' records.

194.    The hours assigned and worked, the positions held, deliveries completed, and the rates of pay and reimbursements paid for each Rule 23 Class Member are determinable from Defendants' records.

195.    All of the records relevant to the claims of Rule 23 Class Members should be found in Defendants' records.

196.    For the purpose of notice and other purposes related to this action, their names and contact information are readily available from Defendants.

197.    Notice can be provided by means permissible under Rule 23.

198.    The Rule 23 Class member are so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court.

199.    There are more than 50 Rule 23 Class members.

200.    Plaintiff's claims are typical of those claims which could be alleged by any Rule 23 Class member, and the relief sought is typical of the relief which would be sought by each Rule 23 Class member in separate actions.

201.    Plaintiff and the Rule 23 Class members have all sustained similar types of damages as a result of Defendants' failure to comply with the OLPA.

202.    Plaintiff and the Rule 23 Class members sustained similar losses, injuries, and damages arising from the same unlawful practices, polices, and procedures.

203.    Plaintiff is able to fairly and adequately protect the interests of the Rule 23 Class and has no interests antagonistic to the Rule 23 Class.

204.    Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation.

205.    A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation on behalf of minimum wage employees where individual class members lack the financial

resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender.

206.    This action is properly maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3).

207.    Common questions of law and fact exist as to the Rule 23 Class that predominate over any questions only affecting Plaintiff and the Rule 23 Class members individually and include, but are not limited to:

    a.   Whether Plaintiff and the Rule 23 Class members were subject to a common policy that required them to provide cars to complete deliveries for Defendants;

    b.   Whether Plaintiff and the Rule 23 Class members were subject to a common automobile expense reimbursement policy;

    c.   Whether Plaintiff and the Rule 23 Class incurred expenses for the benefit of Defendants in the course of completing deliveries;

    d.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members for their actual expenses;

    e.   Whether Defendants reimbursed Plaintiff and the Rule 23 Class members at the IRS standard business mileage rate for the miles they drove in making deliveries;

    f.    Whether Defendants properly reimbursed Plaintiff and the Rule 23 Class members;

g.  Whether Plaintiff and the Rule 23 Class were actually paid the wage rate they were promised by Defendants after accounting for automobile expenses and reimbursement payments;

h.  Whether Defendants failed to pay Plaintiff and the Rule 23 Class in a timely manner as described by the OLPA;

i.  The nature and extent of class-wide injury and the measure of damages for those injuries.

208.   In recognition of the services Plaintiff has rendered and will continue to render to the Rule 23 Class, Plaintiff will request payment of a service award upon resolution of this action.

### Causes of Action

### Count 1
### Failure to Pay Minimum Wages - Fair Labor Standards Act
### (On Behalf of Plaintiff and the FLSA Collective)

209.   Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

210.   Plaintiff and the FLSA Collective are or were non-exempt, hourly employees entitled to receive no less than minimum wage for all hours worked.

211.   Defendants paid Plaintiff and the FLSA Collective at or close to minimum wage for all hours worked.

212.   Defendants required and continue to require Plaintiff and the FLSA Collective to pay for automobile expenses and other job-related expenses out of pocket, and failed to properly reimburse Plaintiff and the FLSA Collective for said expenses.

213.     By the acts and conduct described above, Defendants willfully violated the provisions of the FLSA and disregarded the rights of Plaintiff and the FLSA Collective.

214.     Plaintiff and the FLSA Collective have been damaged by Defendants' willful failure to pay minimum wage as required by law.

215.     As a result of Defendants' willful violations, Plaintiff and the FLSA Collective are entitled to damages, including, but not limited to, unpaid wages, unreimbursed expenses, liquidated damages, costs, and attorneys' fees.

## Count 2
## Untimely Payment of Wages – Oklahoma Labor Protection Act
### (On Behalf of Plaintiff and the Rule 23 Class)

216.     Plaintiff restates and incorporates the foregoing allegations as if fully rewritten herein.

217.     During all relevant times, Defendants were covered by the OLPA, and Plaintiff and the Rule 23 Class were employees within the meaning of the OLPA and were not exempt from its protections.

218.     The OLPA, Okla. Stat. § 40-165.2, requires that Defendants pay Plaintiff and the Rule 23 Class all wages due on regular paydays designated in advance at least twice during each calendar month.

219.     By failing to pay Plaintiff and the Rule 23 Class minimum wage, Defendants have failed to pay them all wages due to them under the OLPA.

220.    Plaintiff and the Rule 23 Class's unpaid wages and unreimbursed expenses have remained unpaid for more than thirty (30) days beyond their regularly scheduled payday.

221.    Plaintiff's and the Rule 23 Class's entitlement to the wages sought herein is and has been undisputed.

222.    As a result of Defendants' willful violation, Plaintiff and the Rule 23 Class are entitled to unpaid wages and liquidated damages under § 40-165.3(B), as stated in the OLPA.

**WHEREFORE**, Plaintiff Brandon Darcy prays for all of the following relief:

A.    Designation of this action as a collective action on behalf of the collective action members and prompt issuance of notice to all similarly-situated members of an opt-in class, apprising them of this action, permitting them to assert timely wage and hour claims in this action, and appointment of Plaintiff and their counsel to represent the collective action members.

B.    Unpaid minimum wages, reimbursement of expenses, and an additional and equal amount as liquidated damages pursuant to the FLSA and supporting regulations.

C.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

D.    Designation of Plaintiff as representative of the Rule 23 Class and counsel of record as Class Counsel.

E.      A declaratory judgment that the practices complained of herein are unlawful under the OLPA.

F.      An award of unpaid minimum wages and unreimbursed expenses due under the OLPA.

G.      Liquidated damages under the OLPA.

H.      An award of prejudgment and post-judgment interest.

I.       An award of costs and expenses of this action, together with reasonable attorneys' fees and expert fees.

J.      Such other legal and equitable relief as the Court deems appropriate.

Respectfully submitted,

*/s/ Jeffrey A. Taylor*
Jeffrey A. Taylor
OBA # 17210
Attorney for Plaintiff
JEFFREY A. TAYLOR, P.C.
5613 North Classen Boulevard
Oklahoma City, OK 73118
Telephone: (405) 286-1600
Facsimile: (405) 842-6132
*taylorjeff@mac.com*

Andrew R. Biller (Ohio Bar # 0081452) (*pro hac vice forthcoming*)
BILLER & KIMBLE, LLC
4200 Regent Street, Suite 200
Columbus, OH 43219
Telephone: (614) 604-8759
Facsimile: (614) 340-4620
*abiller@billerkimble.com*

Andrew P. Kimble (Ohio Bar # 0093172) (*pro hac vice forthcoming*)
Erica Blankenship (Ohio Bar # --) (*pro hac vice forthcoming*)
BILLER & KIMBLE, LLC
8044 Montgomery Road, Suite 515
Cincinnati, OH 45236
Telephone: (513) 715-8711
Facsimile: (614) 340-4620
*akimble@billerkimble.com*
*eblankenship@billerkimble.com*

www.billerkimble.com

*Counsel for Plaintiff and the putative class*

**JURY DEMAND**

Plaintiff hereby demands a jury trial by the maximum persons permitted by law on all issues herein triable to a jury.

*/s/ Jeffrey A. Taylor*
Jeffrey A. Taylor